J-A17004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.W.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 587 EDA 2020 |

Appeal from the Decree Entered January 24, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000030-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: N.N.W.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 588 EDA 2020 |

Appeal from the Decree Entered January 24, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000031-2018

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    Filed: September 10, 2020

K.S. ("Mother") appeals from the January 24, 2020 decrees granting the

petitions filed by the Philadelphia Department of Human Services ("DHS") to

involuntarily terminate Mother's parental rights to her son, N.M.W.-S., and daughter, N.N.W.-S.[1]  We affirm.[2]

N.M.W.-S. and N.N.W.-S. were born in April 2009 and May 2011, respectively.  The children came into DHS's care and custody in early 2016 after Mother was discovered unconscious in the snow with the children present.  N.T., 1/24/20, at 12-13.  Since their original placement, N.M.W.-S. and N.N.W.-S. have remained together in what is now the pre-adoptive kinship foster home with their maternal cousin.  *Id*. at 18.

The juvenile court adjudicated the children dependent in February 2016. DHS, with the assistance of the Community Umbrella Agency ("CUA"), developed single case plan objectives for Mother, but Mother's persistent substance abuse marred her progress over the ensuing two years.

On January 11, 2018, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  After multiple continuances, the trial court held an evidentiary hearing on January 24, 2020.  Mother was represented by counsel and the children were represented by a guardian *ad litem* as well as legal counsel, who

---

[1] By separate orders, the trial court continued the matter to allow J.W., the father of N.M.W.-S. and N.N.W.-S., to relinquish his parental rights to both children.  He did not participate in this appeal.

[2] This Court consolidated the appeals for disposition.

is identified in the certified record as the child advocate.[3]  At the hearing, DHS presented the testimony of Lashawn Richardson and Lakeisha Watkins, the CUA case manager and the family support case worker, respectively. Children's legal counsel presented the testimony of Roya Paller, the social worker who assessed the children's understanding of the adoption, their attachment to the kinship foster parent, and their desire to be adopted. Mother did not testify or offer any evidence on her behalf.

On January 24, 2020, the trial court involuntarily terminated the parental rights of Mother pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  Mother filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

> She presents the following issues for our review:
>
> 1.  Whether the [juvenile court] erred in [t]erminating [Mother]'s [p]arental [r]ights under 23 [Pa.C.S. §] 2511(a)(1), the evidence having been insufficient to establish Mother had evidenced a settled purpose of relinquishing parental claim, or having refused or failed to perform parental duties[?]
>
> 2.  Whether the evidence was sufficient to establish that [Mother] had refused or failed to perform parental duties, caused [N.M.W.-S. and N.N.W.-S.] to be without essential parental care, that conditions having led to placement continued to exist, or finally that any of the above could not have been remedied[?]

---

[3] While neither the guardian *ad litem* nor legal counsel filed a brief in this Court, both supported the termination of Mother's parental rights as serving the children's best interest and legal interest, respectively.  N.T., 1/24/20, at 42-43.

3. Whether the [e]vidence was sufficient to establish that [t]erminating of [p]arental [r]ights would best serve the [n]eeds and [w]elfare of [N.M.W.-S. and N.N.W.-S.] under 23 Pa.C.S. [§] 2511(b)[?]

Mother's brief at 5.[4]

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id**. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id**. The trial court's decision, however, should not be reversed merely because the record would support a different result. **Id**. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. **See In re R.J.T.**, [9 A.3d 1179, 1190 (Pa. 2010)].

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G. & J.G.**, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f

---

[4] We interpret Mother's second issue as challenging the statutory grounds outlined in § 2511(a)(2). To the extent that the issue could be read to also challenge subsections (a)(5) and (a)(8), those claims are waived because Mother failed to include any discussion of these subsections in her brief. **See In re A.C.**, 991 A.2d 884, 897 (Pa.Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of § 2511(a), as well as

§ 2511(b). **_See In re B.L.W._**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, we review the court's determination pursuant to § 2511(a)(2) and (b),

which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

With regard to termination of parental rights pursuant to § 2511(a)(2),

we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to

be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). Furthermore, "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, *supra* at 340 (internal quotation marks and citations omitted).

The crux of Mother's argument is that the trial court focused upon her substance abuse problems in discussing her parenting incapacity. Mother's brief at 14. Mother notes that, despite those issues, she completed parenting classes and her visits with her children are described as mostly positive. *Id*. Further, Mother posits that there is little advantage to termination of her parental rights as N.M.W.-S. and N.N.W.-S. love her and her substance abuse problems may simply require more time to resolve. *Id*. at 14-15. Accordingly, she asserts that DHS did not satisfy its burden of proof.

In finding that DHS presented clear and convincing evidence of the statutory grounds for terminating Mother's parental rights pursuant to § 2511(a)(2), the trial court stated:

> Applying [**M.E.P**.] and the elements set forth under 2511(a)(2) to the instant case, DHS met its burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to care for [N.M.W.-S. and N.N.W.-S.]. Mother failed to cooperate with the services provided by CUA, including drug and alcohol treatment, mental health treatment, and visitation. The testimony demonstrated that, because of Mother's history of substance abuse, drug and alcohol treatment would be essential for Mother to engage in before reunification could occur. Moreover, the evidence established that "neglect" existed given that Mother failed to visit with [N.M.W.-S. and N.N.W.-S.] for at least four months after the concerning incidents described by both Ms. Richardson and Ms. Watkins. This [c]ourt found that Mother's failure to comply with CUA and consistently visit [N.M.W.-S. and N.N.W.-S.] has left [N.M.W.-S. and N.N.W.-S.] without essential parental care, and the cause of such neglect, refusal, and continued incapacity will not be remedied by Mother. Based on the foregoing, the [c]ourt found that competent evidence existed to justify the termination of Mother's parental rights pursuant to [§] 2511(a)(2).

Trial Court Opinion, 3/16/20, at 9-10.

Our review of the certified record supports the trial court's finding of grounds for termination under § 2511(a)(2). The record reveals that, due to Mother's abuse of PCP ("Phencyclidine"), she failed to complete the SCP objectives, including random drug screens, mental health treatment, drug and alcohol treatment, and visitation. N.T., 1/24/20, at 13. Ms. Richardson, the CUA case manager, testified that Mother had not completed any of her single case plan objectives, other than visitation. *Id*. at 15. While Mother previously

- 8 -

submitted to drug screens, in the year that Ms. Richardson has been involved in the case, Mother had not attended any drug screens, nor had she engaged in any drug and alcohol treatment. *Id*. at 14-15. Likewise, although Mother attended a parenting course, she did not complete any services through Achieving Reunification Center ("ARC"), as the agency requested. *Id*.

As it relates to the supervised visitations with N.M.W.-S. and N.N.W.-S., Mother attended the sessions initially, but as Ms. Richardson explained, the visitations were suspended for four month's due to Mother's substance abuse and her failure to submit to the requested drug screen. *Id*. at 14, 15. Ms. Richardson testified, "So, in the beginning, yes [Mother was consistent]. Then there was a stop because she was viewed on some sort of substance, high, at the visitation. And they ended the visit and sent her for a random [drug screen]. She still didn't go for the random." *Id*. at 14-15. As a result of the enduring substance abuse and associated mental health issues, Ms. Richardson did not believe that reunification was appropriate. *Id*. at 16-17.

Ms. Watkins, the CUA support worker assigned to the family, also noticed issues during the visitations. She described observing Mother "under the influence maybe two or three times." *Id*. at 29-30. Ms. Watkins recounted that Mother's behavior on these occasions upset N.M.W.-S. and N.N.W.-S., who desired to end the visitations early. *Id*. at 30-33. Ms. Watkins stated that Mother's visitation had only recently resumed, with two visits

occurring since the beginning of that month.[5] *Id.* at 33. She also reported an additional lapse in the visitations because Mother blocked her telephone number. *Id*.

The foregoing evidence established that (1) Mother has a repeated and continued parenting incapacity based upon her substance abuse; (2) the incapacity caused N.M.W.-S. and N.N.W.-S. to be without essential parental control or subsistence necessary for their physical and mental well-being; and (3) Mother cannot or will not remedy this situation. ***See In re Adoption of M.E.P.***, 825 ***supra*** at 1272 (outlining the three elements of § 2511(a)(2)). As the certified record supports the court's determination to terminate Mother's parental rights pursuant to § 2511(a)(2), we do not disturb it.

Next, we turn to whether the termination of Mother's parental rights was proper under § 2511(b). Our Supreme Court described the necessary review by the trial court as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as

---

[5] While Mother attended two recent visits, Ms. Watkins related that Mother did cancel one visit, requiring Ms. Watkins to take N.M.W.-S. and N.N.W.-S. to their grandmother's house. *Id*. at 33.

- 10 -

discussed below, evaluation of a child's bonds is not always an easy task.

**In re T.S.M.**, **supra** at 267.  In addition, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.  The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case."  **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony.  Social workers and caseworkers can offer evaluations as well.  Additionally, § 2511(b) does not require a formal bonding evaluation." **In re Z.P.**, **supra** at 1121 (internal citations omitted).  Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

**In re Adoption of C.D.R.**, **supra** at 1219 (quoting **In re N.A.M.**, 33 A.3d 95, 103 (Pa.Super. 2011)) (cleaned up).

In finding that N.M.W.-S.'s and N.N.W.-S.'s emotional needs and welfare favor termination pursuant to § 2511(b), the trial court reasoned as follows:

> this [c]ourt determined that [N.M.W.-S. and N.N.W.-S.] would not suffer irreparable emotional harm if Mother's parental rights were terminated.  There was credible testimony from Ms. Richardson that [N.M.W.-S. and N.N.W.-S.] would not suffer any irreparable

- 11 -

harm. The testimony demonstrated that [N.M.W.-S.'s and N.N.W.-S.'s] primary bond is with the foster parent and that the foster parent meets [N.M.W.-S.'s and N.N.W.-S.'s] daily needs. This [c]ourt also considered that [N.M.W.-S. and N.N.W.-S.] expressed concerns regarding Mother's behavior, including significant anxiety attending visitation, and their desire to stay with their foster parent, with whom they feel safe. Additionally, in determining that termination would best serve the needs and welfare of [N.M.W.-S. and N.N.W.-S.], this [c]ourt considered that Mother had not been able to meet [N.M.W.-S.'s and N.N.W.-S.'s] emotional, physical, and developmental needs for approximately four years prior to the TPR hearings. For the foregoing reasons, this [c]ourt properly granted DHS's petition to involuntarily terminate the parental rights of Mother pursuant to [§] 2511(b).

Trial Court Opinion, 3/16/20, at 12-13.

Mother argues that DHS offered little evidence beyond the caseworker's statement that N.M.W.-S. and N.N.W.-S. would not suffer irreparable harm as a result of termination. N.T., 1/24/20, at 15-16. In particular, Mother notes that a bonding evaluation was not conducted and asserts that an evaluation would have more fully and appropriately addressed the children's needs. *Id*. at 16. Lastly, Mother notes that N.M.W.-S. and N.N.W.-S. are stable and, therefore, there is no detriment to her retaining her parental rights. *Id*. at 16.

We discern no abuse of discretion. First, contrary to Mother's protestations, a formal parent-child bonding evaluation is not required in this case. **In re Z.P.**, **supra** at 1121. Indeed, it was sufficient for the trial court to determine the children's needs and welfare based upon the various social worker's testimony concerning, *inter alia*, the children's interactions with Mother and foster mother, respectively, and their desire to be adopted. **Id**.

Moreover, Ms. Richardson specifically opined that the children would not suffer irreparable harm as a result of termination of Mother's parental rights. *See* N.T., 1/24/20, at 20-21. More importantly, as summarized *infra*, the certified record supports the trial court's finding that the developmental, physical, and emotional needs and welfare of N.M.W.-S. and N.N.W.-S. favor terminating Mother's parental rights in order to facilitate their adoption by the kinship foster parent.

At the time of the hearing, Mother's supervised visitation had only recently resumed after being suspended for at least four months due to her substance abuse. N.T., 1/24/20, at 14-15, 33. Tellingly, Ms. Richardson testified that the interactions between Mother and N.M.W.-S. and N.N.W.-S. during the supervised visitations were positive when Mother was sober but were harmful to the children when Mother was under the influence of illicit substances. *Id*.at 17-18. She stated, "when she showed up under some sort of substance. You know, they were crying." *Id*. at 18. Ms. Watkins, the CUA family support worker, corroborated Ms. Richard's concerns. She observed Mother under the influence of an illicit substance during the visitations on two or three separate incidents, and noted that Mother's behavior upset N.M.W.-S. and N.N.W.-S. so much that they desired to end the visits prematurely. *Id*. at 29-33.

Likewise, Roya Paller testified that while N.M.W.-S. and N.N.W.-S. love Mother, "[t]here are sometimes behavioral concerns that make the children nervous. Mom acts erratic, especially sometimes during the visits. They

talked about how the visits . . . cause anxiety, and . . . make them nervous[.]" *Id*. at 39.

In contrast to the drug-fueled behavior that the children periodically encountered during their supervised visitations with Mother, their interactions with the foster mother in the pre-adoptive foster home are stable and enriching. N.M.W.-S. and N.N.W.-S. have resided with their foster mother, who is a cousin, since their original placement. *Id*. at 18. They bonded with her and thrived under her care. *Id*. Ms. Richardson described the familial relationship as, "Very bonded. They look to her as a second mom. They definitely depend solely upon her. She's very consistent with them as far as school and, you know, homework, and taking them out, . . . I think it's a very bonded relationship." *Id*. Ms. Richardson further confirmed that "[N.M.W.-S and N.N.W.-S.] look to their foster parent for "love, safety and stability," and, as a result, want to remain where they are." *Id*. at 18-19, 21.

Similarly, Ms. Paller testified that "[b]oth children were very, very happy in the home, very bonded and attached to [their] [f]oster [m]other. . . ." *Id*. at 38. According to Ms. Paller, N.M.W.-S. and N.N.W.-S. understood the concept of adoption and wanted to be adopted. *Id*. at 38. They "fe[lt] safe" in their foster parent's home. *Id*. at 39.

As we have often stated, although a parent may profess to love her children, a parent's own feelings of love and affection will not preclude termination of parental rights. *In re Z.P.*, *supra* at 1121. At the time of the evidentiary hearing in this case, N.M.W.-S. and N.N.W.-S. had been in

placement in foster mother's care for approximately four years, and are entitled to permanency and stability. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, for all of the foregoing reasons, the trial court did not err or abuse its discretion in terminating Mother's parental rights pursuant to § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/20

- 15 -